| | |
|---|---|
| Hal D. Cunningham (Bar No. 243048) | Christian Levis (admitted *pro hac vice*) |
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | Amanda Fiorilla (admitted *pro hac vice*) |
| 600 W. Broadway, Suite 3300 | **LOWEY DANNENBERG, P.C.** |
| San Diego, CA 92101 | 44 South Broadway, Suite 1100 |
| Telephone: (619) 223-4565 | White Plains, NY 10601 |
| Facsimile: (619) 233-0508 | Telephone: (914) 997-0500 |
| hcunningham@scott-scott.com | Facsimile: (914) 997-0035 |
| | clevis@lowey.com |
| | afiorilla@lowey.com |

*[additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | Case No. 4:23-cv-02343-HSG |
| | CLASS ACTION |
| Plaintiff, | |
| | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| GOOGLE LLC, | Date: July 20, 2023 |
| | Time: 2:00 p.m. |
| Defendant. | Crtrm.: 2, 4th Floor |
| | Judge: Hon. Haywood S. Gilliam, Jr. |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 20, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr. of the United States District Court of the Northern District of California, located at the Oakland Courthouse, 4th Floor, Courtroom 2, 1301 Clay Street, Oakland, California, Plaintiff Jane Doe, on behalf of herself and others similarly situated, will and hereby does move the Court for a preliminary injunction.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rules 65-2 and 7-2 of the Local Rules of the Northern District of California, Plaintiff requests the Court issue an Order for a Preliminary Injunction against Defendant Google LLC ("Google") requiring it to immediately cease the interception, disclosure, retention, and use of individuals' health information and communications with healthcare providers collected via Google's software development kits, tracking pixel, cookies, and other tracking technology, including Google Analytics (collectively Google's "Tracking Technology"), incorporated in healthcare providers' websites and mobile applications. Plaintiff requests an Order:

1.      Prohibiting Google from intercepting individuals' health information and their communications with healthcare providers through its use of Google's Tracking Technology, including by requiring Google to remove its Tracking Technology from healthcare providers' websites and mobile applications;

2.      Prohibiting Google from disclosing and/or using individuals' health information and their communications that it has intercepted from healthcare providers websites and mobile applications through its use of Google's Tracking Technology; and

3.      Immediately ordering Google to permanently delete all individuals' health information and their communications with healthcare providers intercepted from healthcare providers' websites and mobile applications through its use of Google's Tracking Technology.

Google intercepts individuals' health information and their communications with healthcare providers through its Tracking Technology incorporated on healthcare providers' websites and mobile applications. Google discloses, stores, and uses this information for its own benefit, including to optimize or target advertisements, and improve its algorithms, models, or other technology. Google's

conduct is pervasive (affecting individuals who visit more than 3,691 healthcare provider websites), unlawful, and will continue to affect individuals throughout the United States who share their health information and communicate with their healthcare providers online without this Court's intervention. For these reasons, and as described further below, Plaintiff and the Class she seeks to represent will suffer irreparable harm absent the relief requested herein. The balance of the equities weighs in favor of granting Plaintiff's request, and it serves the public interest by preventing Google's ongoing invasion of individuals' rights to privacy and the interception of their private health data.

Plaintiff's Motion for Preliminary Injunction ("Motion") is supported by this Notice of Motion, the Memorandum of Points and Authorities in Support thereof, the Declaration of Christian Levis, filed contemporaneously with this Motion, and all records and papers on file in this action.

Dated: May 25, 2023

/s/ Christian Levis
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Hal D. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 223-4565
Facsimile: (619) 233-0508
hcunningham@scott-scott.com

Joseph P. Guglielmo (*pro hac vice* forthcoming)
Carey Alexander (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
ecomite@scott-scott.com

*Attorneys for Plaintiff and the Proposed Class*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 4:23-cv-02343-HSG

1

## **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ..................................................................................................II

3  I.  INTRODUCTION ..................................................................................................... 1

4  II.  STATEMENT OF ISSUES ....................................................................................... 3

5  III.  STATEMENT OF FACTS ........................................................................................ 3

6  IV.  LEGAL ARGUMENT................................................................................................ 5

7      A.  There is a Likelihood of Success on the Merits ........................................... 5

8          1.  Plaintiff's CIPA § 631 Claim is Meritorious and Likely to Succeed .............. 6

9          2.  Plaintiff's CIPA § 632 Claim is Meritorious and Likely to Succeed .............. 7

10         3.  Plaintiff's Privacy Claims are Meritorious and Likely to Succeed.................. 8

11         4.  Any Consent Defense Google May Put Forth Will Fail ................................. 10

12     B.  Irreparable Harm is Likely Absent an Injunction ....................................... 11

13     C.  The Balance of Equities Support Granting Plaintiff's Request ................. 12

14     D.  The Public Interest Supports Granting Plaintiff's Request........................ 13

15  V.  CONCLUSION......................................................................................................... 14

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
   No. 314-cv-00751-GPC-DHB, 2016 WL 3543699 (S.D. Cal. June 29, 2016) ............................. 7

5

6

*Brooks v. Thomson Reuters Corp.,*
   No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................................ 12

7

8

*Byars v. Goodyear Tire & Rubber Co.,*
   No. 522-cv-01358-SSS-KKX, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) .............................. 6

9

10

*Calhoun v. Google LLC,*
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................ 9, 10

11

12

*Campbell v. Facebook Inc.,*
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................ 10

13

*Carrese v. Yes Online Inc.,*
   No. CV1605301SJOAFMX, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ...................... 7

14

15

*Chalk v. U.S. Dist. Ct. Cent. Dist. of California,*
   840 F.2d 701 (9th Cir. 1988) ........................................ 12, 13

16

17

*Clear Lake Riviera Cmty. Assn. v. Cramer,*
   182 Cal. App. 4th 459 (2010) ........................................ 12

18

19

*Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire,*
   No. CV 13-9235 CAS ASX, 2013 WL 6732687 (C.D. Cal. Dec. 19, 2013) ............................. 12

20

*Doe v. Beard,*
   63 F. Supp. 3d 1159 (C.D. Cal. 2014) ........................................ 9, 13

21

22

*Doe v. Regents of Univ. of California,*
   No. 23-cv-00598-WHO, 2023 WL 3316766 (N.D. Cal. May 8, 2023) ..................... 8, 9

23

24

*Facebook, Inc. v. Jeremi Fisher,*
   09-05842 JF (PVT), 2009 WL 5095269 (N.D. Cal. Dec. 21, 2009) .............................. 11

25

26

*Facebook, Inc. v. Wallace,*
   No. C-09-00798-JF, 2009 WL 840391 (N.D. Cal. Mar. 24, 2009) .............................. 12

27

*Hecox v. Little,*
   479 F. Supp. 3d 930 (D. Idaho 2020) ........................................ 13

28

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ............................................................................ 8, 9

*In re Facebook Consumer Privacy Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................. 10

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ....................................................................................... 6, 8, 9

*In re Google Assistant Priv. Litig.*,
    546 F. Supp. 3d 945 (N.D. Cal. 2021) ................................................................................... 8

*In re Google Inc. Gmail Litig.*,
    No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .............................. 11

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ...................... 10

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ........................................................................................... 6-7

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 40 (1974) .............................................................................................................. 13

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ................................................................................................ 5

*Maxcrest Ltd. v. United States*,
    No. 15-MC-80270-JST, 2016 WL 6599463 (N.D. Cal. Nov. 7, 2016) ......................... 12

*McCoy v. Alphabet, Inc.*,
    No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................... 10, 11

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ................................................................................. 8

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ............................................................................................. 11

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
    No. SACV 12-463 DOC MLGX, 2012 WL 1698368 (C.D. Cal. May 15, 2012) .............. 14

*Opperman v. Path*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................................... 9

*Revitch v. New Moosejaw, LLC*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................ 6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 4:23-cv-02343-HSG

*SEC v. Liu,*
 851 F. App'x 665 (9th Cir. 2021) .................................................................. 5

*Small v. Avanti Health Sys., LLC,*
 661 F.3d 1180 (9th Cir. 2011).................................................................... 11

*SoftMan Prod. Co., LLC v. Adobe Sys., Inc.,*
 171 F. Supp. 2d 1075 (C.D. Cal. 2001)..................................................... 13

*Stasi v. Inmediata Health Grp. Corp.,*
 501 F. Supp. 3d 898 (S.D. Cal. 2020) ...................................................... 8, 9

*Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.,*
 609 F.3d 975 (9th Cir. 2010)..................................................................... 3, 5

*Univ. of Tex. v. Camenisch,*
 451 U.S. 390 (1981) ...................................................................................... 5

*Wells Fargo Bank, N.A. v. Clark,*
 No. CIV. 11-6248-TC, 2011 WL 3715116 (D. Or. Aug. 23, 2011) ........... 13

*Winter v. Nat. Res. Def. Council, Inc.,*
 555 U.S. 7 (2008)........................................................................... 3, 5, 11, 12

*Yoon v. Lululemon USA, Inc.,*
 549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................................................... 6

**Statutes**

Cal. Const. Art. I, § 1 ................................................................... 5, 9, 13

Cal. Penal Code § 631 (West 2023).................................................. 5, 6, 7

Cal. Penal Code § 631(a) (West 2023) .................................................. 6

Cal. Penal Code § 632 (West 2023)....................................................... 7

Cal. Penal Code § 632(c) ....................................................................... 7

## I.      INTRODUCTION

There is no question that the interception of an individual's health data and their private communications with healthcare providers without consent is unlawful. Yet this is exactly the conduct Google engages in on a daily, ongoing basis. Plaintiff seeks an injunction to prevent Google from continuing its unlawful behavior, namely its interception, disclosure, storage, and use of Plaintiff's and Class members' health data and their private communications with healthcare providers that it obtains through its Tracking Technology without Plaintiff's or Class members' consent.

Google designed its Tracking Technology to be incorporated into third party websites through a small piece of JavaScript code embedded on each page of the site. The code intercepts a user's interactions, including any information they input and what they click, as they navigate each page and sends that information, along with identifiable information, to Google for processing. Google uses the data collected from both websites and mobile applications to provide marketing and analytics services, as well as to improve its ad targeting capabilities and other technologies.

As alleged in Plaintiff's Class Action Complaint ("Compl.") (ECF No. 1) ¶¶ 48-49, Plaintiff has identified various healthcare providers, including Planned Parenthood, Keck Medicine of USC, MemorialCare: Long Beach Medical Center, and Sharp HealthCare, that incorporate Google's Tracking Technology. Several studies estimate this is just a fraction of the healthcare providers whose websites and mobile applications currently incorporate Google's Tracking Technology. For instance, a group of professors from the University of Pennsylvania uncovered, as recently as April 2023, that 98.5% of the 3,700 hospital homepages they examined transfer data to Google's parent company Alphabet.[1] Another study from 2021 found that 89% of the 61 hospitals they examined used Google's Tracking Technology.[2]

As independent testing of currently available websites can easily detect which websites and pages incorporate Google's Tracking Technology, there is no reason why Google itself cannot identify all healthcare providers from which it is currently acquiring such health information and immediately stop the flow of data to its own systems. Indeed, Plaintiff is confident based on certain health category

---

[1] Exs. A and B to the Declaration of Christian Levis in Support of Plaintiff's Motion for Preliminary Injunction ("Levis Decl.").
[2] Ex. C, Levis Decl.

classifications associated with Google's ad platform (e.g., "AIDS & HIV," "GERD & Digestive Disorders," "Cholesterol Issues," and "ADD & ADHD"),[3] and Google's knowledge of which websites use its source code, that it can cross-reference that list for healthcare providers.

There is also no reason why Google cannot **delete** the data from its systems that was obtained from healthcare providers. Once Google identifies the healthcare providers from whom it intercepts individuals' health data and communications, it can delete the data it intercepts from those websites and applications from (at least) its analytics servers. Google has the means to do so, as it already deletes data collected through its Tracking Technology by default within 26 months as part of its data retention policy.[4] Indeed, a Google spokesperson has confirmed it already takes steps to delete certain location data it receives from third parties that it deems "sensitive" because they reveal which healthcare providers an individual visited.[5] Google can deploy these same means to ensure actual health data and communications with healthcare providers (a quintessential form of "sensitive" data) is deleted as well.

Nor is there any reason Google cannot disable the ongoing use of this data before it is deleted. Google has certain mechanisms in place that throttle which data users of its Tracking Technology can access. For example, if the number of male users in any given dataset reported through Google Analytics is too low, Google withholds the male value to prevent individual identification of that user.[6] Google can withhold data falling within health category classifications it already uses in connection with its ad platform to prevent the ongoing use of this sensitive information in Google Analytics that was obtained without consent. Separately, Google has publicly admitted that it can "mark" data as sensitive to prevent its use in Google's ad products. Google should be ordered to take these same measures here to prevent the continued use of health data it intercepted without consent.

For these reasons, Plaintiff seeks an Order that will: (1) prohibit Google from intercepting individuals' health information and their communications with healthcare providers through its use of Google's Tracking Technology, including by requiring Google to remove its Tracking Technology

---

[3] Ex. D, Levis Decl.
[4] Ex. E, Levis Decl.
[5] Ex. F, Levis Decl.
[6] Ex. G, Levis Decl.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 4:23-cv-02343-HSG

from healthcare providers' websites and mobile applications; (2) prohibiting Google from disclosing and/or using individuals' health information and their communications that it has intercepted from healthcare providers through its use of Google's Tracking Technology; and (3) ordering Google to permanently delete all individuals' health information and their communications with healthcare providers intercepted from healthcare providers' websites and mobile applications through its use of Google's Tracking Technology.

## II.   STATEMENT OF ISSUES

This Court should issue a preliminary injunction because: (1) Plaintiff is likely to succeed on the merits; (2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in Plaintiff's favor; and (4) an injunction is in the public interest. *See Toyo Tire Holdings of America Inc. v. Continental Tire North America, Inc*., 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat'l Res. Def. Council, Inc*., 555 U.S. 7 (2008)).

## III.   STATEMENT OF FACTS

Google's Tracking Technology is incorporated into third party websites by adding a small piece of JavaScript measurement code to each page on the site. Compl. ¶ 39. This code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on. *Id.* The code also collects identifiable information, such as the IP address and Client ID, which is associated with a specific user in Google's systems. *Id.* After Google's Tracking Technology collects the data, it packages the information and sends it to Google for processing in the Google Analytics platform. *Id.* ¶ 40.

The Google Analytics platform also allows the company or advertiser to customize the processing of the data, such as by applying data filters before being processed by Google Analytics. *Id*. Once the data is processed, it is stored on a Google database and cannot be changed. *Id.* Google uses this stored data to generate reports to help the third parties analyze the data from their websites, which include reports on acquisition (e.g., information about where your traffic originates, the methods by which users arrive at your site or app, and the marketing efforts you use to drive traffic), engagement (e.g., measure user engagement by the events and conversion events that users trigger and the web pages and app screens that user visits), and demographics (e.g., classify your users by age,

location, language, and gender, along with interests they express through their online browsing and purchasing activities). *Id.* ¶ 41. The company or advertiser can also integrate Google Analytics and the data it intercepts with Google's advertising offerings, including Google Ads, Search Ads 360, Google Cloud, and Google Ad Manager for use in advertising campaigns and creating targeted audiences. *Id.* ¶ 33. Google also uses the data itself to improve its own ad targeting capabilities and data points on users to optimize the advertisements they see. *Id.* ¶ 42.

Google's Tracking Technology was incorporated on www.plannedparenthood.org, a healthcare provider's website with whom Plaintiff interacted to find and receive medical treatment. *Id.* ¶ 6. When Plaintiff and other Planned Parenthood patients searched for or scheduled appointments for healthcare services (such as an abortion, birth control, and other sensitive sexual and reproductive health services), they entered their zip code, city, or state, and input information regarding whether they are seeking an in-person or telehealth appointment. *Id.* When requesting an abortion, an additional prompt requested the date of the individual's last period. *Id.* Google's Tracking Technology intercepted and re-directed these communications to Google rather than just to Planned Parenthood. As Plaintiff and Class members continued to navigate the website and communicate with their healthcare provider, Google's Tracking Technology intercepted, at a minimum, the user's IP address, the site visited, behavior on the site, reason for visiting the site (e.g., "abortion"), the user's selected method of abortion (e.g., surgical abortion/in-clinic), the browser time zone, the name of the center selected for the appointment, the user's approximate zip code, the user's closest affiliate based on their zip code, a time stamp, whether the user came from a search engine, a link, or typed the URL directly, the user's Client ID, and the browser language. *Id.* ¶ 45.

Google's interception from the Planned Parenthood website is not an exception, but just one example of Google's pervasive and ongoing interception, use, and disclosure of millions of individuals' health data and private communications with their healthcare providers without their consent. *Id.* ¶ 71. Plaintiff has identified many other healthcare providers' websites that incorporate Google's Tracking Technology, including major hospitals and medical centers like Keck Medicine of USC, MemorialCare: Long Beach Medical Center, and Sharp HealthCare, for example. *Id.* ¶ 48. And Plaintiff has been identifying additional healthcare providers whose websites and applications

incorporate Google's Tracking Technology on an ongoing basis and expect discovery to reveal the full extent of the websites and applications that incorporated Google's Tracking Technology over time.

Google's actions are by all means intentional, as it purposefully designed its Tracking Technology to intercept sensitive data from the websites and applications in which they are incorporated so that it could be used for the advertising and analytics services that it offers, as well as for improving Google's own technology. *Id.* ¶¶ 140, 142. In fact, as alleged in the Complaint, Google has known of its interception, storage, disclosure, and use of individuals' health data since at least 2019, yet took no action to prevent its technology from continuing to do so. *Id.* ¶ 22.

## IV.   LEGAL ARGUMENT

Plaintiff seeks an injunction requiring Google to cease all unlawful interception, disclosure, and use of individuals' health data and their communications with healthcare providers from whom they receive treatment through its Tracking Technology and immediately delete all such data from its servers and systems.

An injunction is appropriate when: (1) plaintiff is "likely to succeed on the merits;" (2) plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tip in [plaintiff's] favor;" and (4) "an injunction is in the public interest." *Toyo Tire*, 609 F.3d at 982 (citing *Winter*, 555 U.S. 7). Each of these requirements is satisfied here.

### A.   There is a Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, a plaintiff need not "prove [their] case in full" (*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)) or demonstrate "more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). All that is required is a showing of "probable success on the merits." *SEC v. Liu*, 851 F. App'x 665, 668 (9th Cir. 2021). The relief sought by this Motion relates to Plaintiff's claims against Google for violation of the Cal. Penal Code §§ 631 and 632 ("CIPA"), intrusion upon seclusion, and invasion of privacy in violation of Article I, Section 1 of the California Constitution. Plaintiff has a strong likelihood of succeeding on the merits with respect to these claims.

### 1.     Plaintiff's CIPA § 631 Claim is Meritorious and Likely to Succeed

CIPA § 631(a) is violated when any person (1) "intentionally taps" a "wire, line, cable, or instrument", (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication", (3) "uses, or attempts to use . . . any information so obtained", or (4) "aids, agrees with employs, or conspires" to do any of the above. CIPA § 631(a). Courts in this district and elsewhere in California have consistently found the incorporation of tracking technology that permits a third party to intercept activity on a website to violate at least the first CIPA § 631(a) provision. *See Revitch v. New Moosejaw, LLC*, No. 18-CV-06827, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) (sustaining violation of the first provision of CIPA § 631(a) against an entity whose tracking technology was incorporated on a third party's website); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (same). The incorporation of Google's Tracking Technology on healthcare providers' websites and applications is no different.

Google will likely argue it did not violate CIPA § 631 because it did not intercept the "content" of Plaintiff's and Class members' communications. But there is no "content" requirement to state a claim for "intentionally tapping" a "wire, line, cable, or instrument" under the first provision of CIPA § 631. *See Yoon*, 549 F. Supp. 3d at 1082 (explaining the "content" requirement only applies to CIPA provisions that use this language); *Byars v. Goodyear Tire & Rubber Co.*, No. 5:22-CV-01358, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (explaining that "The Supreme Court of California has simplified § 631(a) as '*three distinct and mutually independent* patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.'") (emphasis added). And in any event, the health data and communications with healthcare providers Google intercepted are in fact "content." The Ninth Circuit has confirmed data is "content" when it reveals "the particular document within a website that a person views," what they search, what they enter, or otherwise "divulge[s] a user's personal interests, queries, and habits on third-party websites." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604-05 (9th Cir. 2020) ("*Facebook Tracking*") (explaining data constitutes "content" under *Zynga* and *Forrester* when it "identifies the particular document within a website that a person views."); *In re*

*Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("*Zynga*") (holding "contents" refers to the "intended message conveyed by the communication."). The information Google intercepts—which includes, among other things, the site visited, behavior on the site, and the healthcare services and treatment users selected—falls squarely within the Ninth Circuit's interpretation of "content" in *Facebook Tracking* and *Zynga*.

Lastly, Google may argue CIPA does not apply to its interception of Plaintiff's and Class members' data because its interception does not occur in California. This argument is wrong. Google is headquartered in California and its collection of Plaintiff's and Class members' sensitive data from healthcare provider websites and use of that data for commercial purposes occurs in California. Compl. ¶¶ 19, 28. Plaintiff herself is also from California and accessed Planned Parenthood's website from that state.[7] But in any event, this entire argument would be buttressed by Google's concession that California law governs all disputes with its customers. *Id.* at ¶ 77. Any suggestion that Google's conduct did not occur in California is contrary to these facts.

Given that Plaintiff's CIPA § 631 claim is in accord with current precedent, it is likely to succeed on the merits.

### 2.      Plaintiff's CIPA § 632 Claim is Meritorious and Likely to Succeed

CIPA § 632 prohibits any person from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." CIPA § 632(a). A "confidential communication" is defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]" CIPA § 632(c). Courts have interpreted the "confidentiality" provision to require a "showing that [Plaintiff] had a reasonable

---

[7] While Plaintiff is from California, Plaintiff does not concede that other, non-resident Class members cannot assert these claims against Google. Quite the opposite. Because (as described above) Google is headquartered in, and intercepted Plaintiff's and Class members' health data from, California, non-residents may assert these claims against Google as well. *See Carrese v. Yes Online Inc.*, No. 2:16-CV-05301, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (finding non-residents could assert claims against California defendant who recorded the communications in California); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-CV-00751, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (same).

expectation of privacy in the . . . communications that they allege were recorded without their consent." *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 957 (N.D. Cal. July 1, 2021).

Very few communications are more confidential than what individuals communicate in the patient-provider context. Courts consistently recognize that individuals have a reasonable expectation of privacy in this type of data. *See Doe v. Regents of Univ. of Cal.*, No. 3:23-cv-00598, 2023 WL 3316766, *6 (N.D. Cal. May 8, 2023) (sustaining common law privacy claims based on the interception of medical data through pixel technology because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person, and I see no reason to deviate from that norm."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (finding even the negligent disclosure of medical information to constitute an invasion of privacy "because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (explaining disclosure of medical information "negligently or otherwise . . . so constitutes a serious invasion of privacy.").

Here, Google intercepted, disclosed, stored, and used Plaintiff's and Class members' intimate communications with healthcare providers, including individuals' behavior on their healthcare providers' websites and mobile applications (e.g., what they searched and which pages they navigated to), the reason for visiting the site (e.g., "abortion"), other sensitive details (e.g., whether surgical abortion versus in-clinic), and the name of the specific center (e.g., Planned Parenthood of Burbank). Google did not have consent to intercept these communications. *See* Section IV.A.4.

As Google eavesdropped and recorded communications that are deemed to be confidential without consent, it is likely Plaintiff will succeed on the merits with respect to this claim.

### 3. Plaintiff's Privacy Claims are Meritorious and Likely to Succeed

Claims for invasion of privacy under the California Constitution and common law intrusion upon seclusion share the same elements and are plausibly alleged where "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. When, as here, both claims are pled in the same complaint, courts evaluate the two claims together. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019).

There is no doubt that Plaintiff and Class members have a reasonable expectation in their health data and communications with healthcare providers from whom they receive treatment. *See In re Ambry*, 567 F. Supp. 3d at 1143 (finding even the negligent disclosure of medical information to constitute an invasion of privacy "because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi*, 501 F. Supp. 3d at 926 (explaining disclosure of medical information "negligently or otherwise . . . so constitutes a serious invasion of privacy."). Indeed, just recently Judge Orrick recognized that individuals' medical data collected through similar tracking technology is "among the most sensitive information," and expressly relied on "that norm" in denying the motion to dismiss the invasion of privacy claim. *See Regents of Univ. of Cal.*, 2023 WL 3316766 at *6. Accordingly, Plaintiff and Class members have a reasonable expectation of privacy in their health data and communications with their healthcare providers.

Whether Google's conduct is highly offensive depends "on the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606. This too is not a close call. Consistent with an abundance of civil and criminal statutes regarding the collection and disclosure of this type of data, public policy has long hailed medical information as one of the most private types of information. *See Doe v. Beard*, 63 F. Supp. 3d 1159, 1169-70 (C.D. Cal. 2014) (explaining Article 1, § 1 "prohibits disclosure of medical information . . . because disclosure can 'subvert a public interest favoring communication of confidential information' to medical personnel, both for treatment purposes and for their own safety."); *Regents of Univ. of Cal.*, 2023 WL 3316766 at *6 (rejecting argument that transmittal of medical data is not highly offensive). The highly offensive nature of Google's conduct here is only more egregious given that it was done surreptitiously in a manner that users could not detect. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive); *Opperman v. Path*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) (ruling that the "surreptitious theft of personal contact information" could be deemed highly offensive). Thus, Plaintiff is likely to prevail on her claims for intrusion upon seclusion and invasion of privacy.

### 4.    Any Consent Defense Google May Put Forth Will Fail

Google will likely argue consent bars Plaintiff's claims. This argument will fail. The party seeking to invoke consent as a defense bears the burden of establishing that consent exists. *See McCoy v. Alphabet, Inc.*, No. 5:20-cv-05427, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021). For the consent to be "actual," the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580, 2022 WL 17869218, at *10 (N.D. Cal. Dec. 22, 2022). To find consent, "the disclosures must have only one plausible interpretation." *Calhoun*, 526 F. Supp. 3d at 619 (internal citation and quotation omitted).

Google's software is seamlessly incorporated into the background of healthcare providers' websites. Accordingly, users have no way of knowing that Google is secretly intercepting their health data and private communications, much less providing consent for Google to do so.

Plaintiff expects Google will point to its own Privacy Policy as somehow providing support for its consent defense. But users of third party healthcare providers' services would not have been presented with and could not have agreed to this policy. Moreover, the policy does not disclose that Google will collect any data from third party websites or mobile applications unaffiliated with Google, let alone data from healthcare provider websites and applications relating to Plaintiff's and Class members' medical condition, treatment, and communications with providers. It merely states in a generic fashion that it collects "[a]ctivity on third-party sites and apps that use [its] services."[8] This statement is essentially meaningless, especially in this context, because no reasonable consumer would understand it to mean that Google intercepts their health data and private communications with their healthcare providers from websites that are not in any way affiliated with Google.

Several courts find these kinds of disclosures inadequate to establish consent. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 792 (N.D. Cal. 2019) ("*Facebook Privacy*") (statement that Facebook "give[s] your information to the people and companies that help us provide, understand, and improve the services" "does not come close to disclosing the massive information-sharing program . . . that the plaintiffs allege."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (statement that Facebook "may use the

---

[8] Ex. H, Levis Decl.

information we received about you" for "data analysis" was "not specific enough" to establish consent to scan messages); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) (explaining a "reasonable Gmail user" would not read a provision that Google will review emails to filter explicit content to mean Google has permission to use email content to develop user profiles).

In fact, at least one court has found this specific statement in Google's Privacy Policy to be insufficient to cover the collection of ***any data*** from third party websites and mobile applications, much less from those offered by healthcare providers. *McCoy*, 2021 WL 405816, at *6 (finding Google's statements on its website "may not be understood by a reasonable user to disclose collection of her usage information on an independent third-party app."); *id.* ("'[A]ctivity on third-party sites and apps that use our services' may not be understood by a reasonable user to include data from apps that are not associated with Defendant's services.'").

For these reasons, this defense will fail.

## B.     Irreparable Harm is Likely Absent an Injunction

A plaintiff seeking a preliminary injunction must also show "that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 8; *see also Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011) (explaining that movant "need not prove that irreparable harm is certain or even nearly certain"). The harm Plaintiff and all Class members face as a result of Google's conduct is irreparable, imminent, and occurring on a daily basis. Google's Tracking Technology is likely incorporated on thousands of healthcare providers' websites and mobile applications at this time. Every time an individual utilizes these services to request treatment, make an appointment, or otherwise communicate with their healthcare provider, Google intercepts this data and invades the individual's privacy. Absent an injunction, this harm will continue.

Several courts have recognized that the invasion of an individual's privacy (like here) is an irreparable harm warranting an injunction. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044-45 (9th Cir. 2012) (holding violation of "right to privacy" demonstrates "irreparable harm is likely in the absence of injunctive relief."); *Facebook, Inc. v. Jeremi Fisher*, No. C 09-05842, 2009 WL 5095269, at *1 (N.D. Cal. Dec. 21, 2009) (granting preliminary injunction that Facebook sought

against scammers that ran phishing campaigns against Facebook users, because "there is a clear possibility of irreparable injury with respect . . . to the personal privacy of Facebook users"); *Facebook, Inc. v. Wallace*, No. C-09-00798-JF, 2009 WL 840391, at \*2 (N.D. Cal. Mar. 24, 2009) (same); *Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cnty. Black Fire*, No. CV 13-9235, 2013 WL 6732687, at \*3 (C.D. Cal. Dec. 19, 2013) (holding that "disclosure of plaintiffs' policyholder's private data to defendants is a separate basis for finding a risk of irreparable injury"); *Chalk v. U.S. Dist. Court Cent. Dist. Of California*, 840 F.2d 701, 710 (9th Cir. 1988) (explaining "irreparably injury" including "consequent emotional stress, depression, and reduced sense of well-being."); *Clear Lake Riviera Cmty. Assn. v. Cramer*, 182 Cal. App. 4th 459, 473 (2010) (finding irreparable harm when neighbors suffered "loss of privacy" caused by construction of a nearby new home). Members of the Senate also agree. In a May 22, 2023 letter to Google ("May 22 Senate Letter"), several members of the Senate warned that this type of data is "extremely personal" and the retention and use of it "to target advertisements for services" is "unnecessary" and "potentially harmful physically, psychologically, or emotionally."[9]

No monetary damages are sufficient to rectify this type of injury. *See Brooks v. Thomson Reuters Corp.*, No. 3:21-CV-01418, 2021 WL 3621837, at \*11 (N.D. Cal. Aug. 16, 2021) (explaining "the injury here is an invasion of privacy that can never be fully remedied through damages."); *Maxcrest Limited v. U.S.*, No. 3:15-MC-80270, 2016 WL 6599463, at \*5 (N.D. Cal Nov. 7, 2016) (explaining "harm to . . . privacy interests would be irreparable because 'there is nothing a court can do to withdraw all knowledge or information . . . once that information has already been divulged.").

As Plaintiff's and Class members' privacy has already been invaded—and will continue to be invaded on an ongoing basis as a result of Google's conduct—injunctive relief is warranted now.

## C.    The Balance of Equities Supports Granting Plaintiff's Request

A plaintiff seeking injunctive relief must also show that "the balance of equities tips in [plaintiff's] favor." *See Winter*, 555 U.S. at 20. In balancing the equities, courts look to whether "plaintiff's injury outweighs any harm to the defendant." *Chalk*, 840 F.2d at 710. The Ninth Circuit

---

[9] Ex. F, Levis Decl.

has stated that only a "minimal tip in the balance of hardships must be found" when there is "the strongest showing on the merits." *Id.* at 710.

As described above, (*see* Section IV.B), the harm to Plaintiff's and Class members' privacy interests in the absence of an injunction is real, concrete, and irreparable. On the other hand, there is very little harm (if any) to Google should it be required to cease the collection, use, and storage of this health data and private communications with healthcare providers that it should never obtain in the first instance. *See Chalk*, 840 F.2d at 710 (finding balance of the equities tipped in plaintiff's favor where any harm to defendant was a "theoretical risk."); *see also Wells Fargo Bank, N.A. v. Clark*, No. CIV. 11-6248-TC, 2011 WL 3715116, at *2-3 (D. Or. Aug. 23, 2011) (finding that "[g]reater injury will be inflicted upon [plaintiff]" if the preliminary injunction is not granted, when plaintiff sought to enjoin disclosure of its "private customer information" including "names, addresses, details of loans [applications]"); *Hecox v. Little*, 479 F. Supp. 3d 930, 963, 988 (D. Idaho 2020), *aff'd*, No. 20-35813, 2023 WL 1097255 (9th Cir. Jan. 30, 2023) (granting preliminary injunction against enforcement of a new statute that would require "turn[ing] over private medical information," and finding that "Plaintiff's harms weigh significantly in favor of injunctive relief" under the balance of equities factor).

### D.   The Public Interest Supports Granting Plaintiff's Request

Lastly, in evaluating whether to issue a preliminary injunction, courts look at whether the plaintiff has shown the public interest weighs in favor of granting the relief sought. *See Chalk*, 840 F.2d at 710 ("We recognize that the public interest is one of the traditional equitable criteria which a court should consider in granting injunctive relief."); *SoftMan Prod. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1090 (C.D. Cal. 2001) ("Traditionally, courts have looked to public policy considerations in determining whether to grant preliminary injunctive relief.").

There is a strong public interest in protecting one's right to privacy, including maintaining the confidential nature of health data and private communications with healthcare providers. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 40, 487 (1974) ("A most fundamental human right, [is] that of privacy."); *Beard*, 63 F. Supp. 3d at 1169-70 (C.D. Cal. 2014) (explaining Article 1, § 1 "prohibits disclosure of medical information . . . because disclosure can 'subvert a public interest favoring

communication of confidential information' to medical personnel, both for treatment purposes and for their own safety."). Several members of the Senate expressed similar concerns about Google's access to this "extremely personal" data in the May 2023 Senate Letter, and urged Google to commit to deleting sensitive "location" data "within 24 hours of a user's visit" from the "user's device and Google servers."[10] This indicates a strong public interest in ensuring this data is not stored and used.

Granting the injunction will further this interest, as it will ensure that Google no longer intercepts Plaintiff's and Class members' private health data and communications with healthcare providers at least while this litigation is pending. *See Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. SACV 12-463 DOC MLGX, 2012 WL 1698368, at *4, *20-21 (C.D. Cal. May 15, 2012) (finding that a preliminary injunction against defendant's "scheme," which involves sharing of consumers' "personal and financial information" with third parties, would serve public interest).

## V.     CONCLUSION

Google's conduct is by all means unlawful and constitutes an invasion of Plaintiff's and Class members' privacy each time it occurs. Given the irreparable harm that will continue to occur absent an injunction and the strong public interests in preserving the confidentiality of this type of information, this Court should enjoin the practices described in this Motion and Plaintiff's Complaint.

Dated: May 25, 2023

*/s/ Christian Levis*
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Hal D. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

---

[10] Ex. F, Levis Decl.

600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 223-4565
Facsimile: (619) 233-0508
hcunningham@scott-scott.com

Joseph P. Guglielmo (admitted *pro hac vice*)
Carey Alexander (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
ecomite@scott-scott.com

*Attorneys for Plaintiff and the Proposed Class*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 4:23-cv-02343-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 25, 2023, I was authorized to electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record in this Action.

*/s/ Christian Levis*
Christian Levis

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 4:23-cv-02343-HSG